# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**JEFFREY S GREEN,**

    **Plaintiff,**

    **v.**

**CHRISTIAN BLAKE** and **JOSHUA LEONARD,**

    **Defendants.**

Case No. 18-2247-CM-JPO

## MEMORANDUM & ORDER

In this action among three members of an Oregon limited liability company, 63rd Street Enterprises, LLC ("the LLC"), Plaintiff Jeffrey S. Green—represented by an attorney who has handled various matters for the LLC—sues defendants Christian Blake and Joshua Leonard for allegedly: inducing him through misrepresentations to contribute $200,000 to the LLC; breaching fiduciary duties owed to the LLC and its members; converting the LLC's assets for personal use; and failing to produce an accounting of the LLC's income and expenses. This court must now decide two interrelated motions: Defendants' Motion To Dismiss For Lack Of Subject Matter Jurisdiction And Other Reasons (Doc. 19) and Defendants' Motion to Disqualify Counsel (Doc. 9). Because plaintiff properly pleads one direct claim and improperly pleads three derivative claims, defendants' motion to dismiss is denied in part and granted in part. As that ruling makes the LLC's involvement in this suit unnecessary, and defendants establish no prior attorney-client relationship between themselves personally and plaintiff's counsel, defendants' motion to disqualify plaintiff's counsel is denied.

-1-

## I.  Background

### A. Plaintiff's Complaint[1]

63rd Street Enterprises, LLC is an Oregon limited liability company, formerly managed by two of its members, defendants Blake and Leonard.  As managers of the LLC, defendants allegedly made various representations to plaintiff that induced plaintiff to contribute to and become a member of the LLC.  Plaintiff alleges defendants fraudulently misrepresented their own assets and finances, the LLC's assets and finances, and their own receipt and use of the LLC's funds by:

- falsely representing their business acumen and that their personal assets could finance the LLC;

- misrepresenting that they had secured, on the LLC's behalf, "the assets and services of Mr. Marsden;"[2] and

- falsifying information about the LLC's finances to avoid discovery of (1) unapproved compensation they paid themselves for managing the LLC and (2) other unauthorized financial transactions and personal use of the LLC's funds.

Plaintiff alleges that these actions misled him—"and other investors"—as to the LLC's viability and financial status, inducing him to contribute to the LLC investments totaling $200,000.[3]  Plaintiff

---

[1] This subsection's facts are taken exclusively from the allegations in plaintiff's complaint. *See Ingram v. Faruque*, 728 F.3d 1239, 1242 (10th Cir. 2013) ("Where the party challenging subject-matter jurisdiction mounts a facial attack"—an attack that does not challenge the truth of the facts pleaded in support of subject-matter jurisdiction—"'the district court must accept the allegations in the complaint as true.'"); *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976) ("The factual allegations of the complaint must be taken as true," when reviewing a motion to dismiss for failure to state a claim).

[2] Plaintiff's complaint fails to elaborate as to "the assets and services of Mr. Marsden," except to say his assets and services were critical to the LLC's viability. (Doc. 1, at 5.)  In subsequent briefing, plaintiff explains that the LLC formed to engage in Oregon's state-regulated medical and recreational cannabis business.  Mr. Marsden is "a well-known and reputable figure" within that industry who is licensed to cultivate and possesses an inventory of unique seed and plant strains.  Defendants allegedly misrepresented that the LLC had secured from Mr. Marsden his services as a cultivator and an inventory of seeds and plants that would be original products for exclusively the LLC to sell in the Oregon cannabis market. (Doc. 18, at 2–3.)

[3] Though not included in his complaint, plaintiff also notes that defendants' misrepresentation induced him to loan the LLC additional sums, beyond his contributions, totaling $23,501. (Doc. 18, at 2.)  Plaintiff indicates his intent to amend his pleading to include a claim that defendants fraudulently induced these loans. (Doc. 22, at 4.)  Plaintiff, however, has not formally requested leave to amend.

characterizes the misdeeds underlying these misrepresentations as both a breach of the fiduciary duties that defendants owed "[a]s [m]anagers and officers of the [LLC]" and as unlawful conversion of "the [LLC's] inventory and property." (Doc. 1, at 3, 7.) Plaintiff finally claims that defendants "have a duty" but have failed, despite his demands, "to account for the [LLC's] income and expenses." (Doc. 1, at 8.)

### B. Procedural History

Plaintiff, through his attorney, Joel B. Laner, filed this suit on May 11, 2018. A few months later, defendants filed a motion to disqualify Mr. Laner and all members of his law firm. (Doc. 9.) Defendants argued that Mr. Laner's representation of plaintiff was unfair and in violation of certain ethical rules because he allegedly had represented defendants in various matters related to various limited liability companies, including 63rd Street Enterprises, LLC. (Docs. 9 & 10.) Shortly thereafter, in the process of screening the case to verify its jurisdiction, the court issued an order requesting that the parties address four issues:

1. Do plaintiff's claims fall under Kansas's choice-of-law statute for foreign LLC's, such that Oregon law applies to the substantive claims?

2. Under the applicable law, are all or some of plaintiff's claims derivative in nature?

3. Is the LLC a necessary and/or indispensable party under Fed. R. Civ. P. 19?

4. How do the answers to the above questions impact the resolution of defendants' pending motion to disqualify plaintiff's counsel?

(Doc. 15, at 2.) Defendants answered these questions by way of their motion to dismiss plaintiffs' case. (Doc. 19.)

## II. Proceeding Pro Se

Before turning to defendants' motions, the court would note that defendants represent themselves. Courts "afford a liberal construction to [filings] of a defendant appearing pro se." *Binford v. United States*, 436 F.3d 1252, 1253 n.1 (10th Cir. 2006). "[T]his rule of liberal construction stops, however, at the point at which [the court] begin[s] to serve as [the pro se litigant's] advocate." *United*

*States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009). As such, the court must not "construct arguments or theories for [defendants] in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (citations omitted).

### III. Defendants' Motion to Dismiss

#### A. Subject-Matter Jurisdiction

Defendants first move to dismiss plaintiff's claims on the basis that this court lacks subject matter jurisdiction. In support, defendants cite authority concerning Kansas' choice-of-law rules. This authority convinces defendants that Oregon (and possibly Arizona) law applies to plaintiffs' claims. Defendants further reason that because Oregon law applies to plaintiff's claims this court lacks subject-matter jurisdiction over the claims: "Kansas' choice-of-law rule dictates that Oregon is the proper jurisdiction, if at all, not Kansas. Therefore, this Court is obliged to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction." (Doc. 20, at 6.)

Defendants, however, confuse two distinct questions: which court has the power to adjudicate plaintiff's claims (a subject-matter jurisdiction question) with what jurisdiction's law controls that adjudication (a choice-of-law question).[4] While defendants' efforts help answer the choice-of-law question, those efforts leave the subject-matter-jurisdiction question unaddressed. Addressing the subject-matter-jurisdiction question would require defendants to show that, contrary to plaintiff's well-pleaded assertions, at the time this case was filed, it involved either nondiverse parties or an amount in controversy less than $75,000. *See Mocek v. City of Albuquerque*, 813 F.3d 912, 934 (10th Cir. 2015)

---

[4] Admittedly, it is possible defendants' confusion started with this court's order requesting that the parties address particular issues—including whether Oregon law applies—in an effort to screen this case for subject-matter jurisdiction. (*See* Doc 15, at 1–2.) Though unexpressed in the order, the order reflected the court's concern that involvement of the LLC (which has approximately 25 members in total), if a necessary and indispensable party to plaintiff's claims, might eliminate complete diversity and thus subject-matter jurisdiction in this case. *See Mgmt. Nominees, Inc. v. Alderney Invs., LLC*, 813 F.3d 1321, 1324–25 (10th Cir. 2016) (determining the citizenship of an LLC for purposes of diversity jurisdiction by that of its members).

-4-

("A federal court has diversity jurisdiction in suits between citizens of different states where the amount in controversy exceeds $75,000."); *Ravenswood Inv. Co. v. Avalon Corr. Servs.*, 651 F.3d 1219, 1223 (10th Cir. 2011) ("Federal jurisdiction is determined based on the facts as they existed at the time the complaint was filed."). Here, however, the only information before the court shows that an Arizona resident sued two Kansas residents for damages in excess of $75,000.[5] As such, subject-matter jurisdiction exists under 28 U.S.C. § 1332.[6] Any dismissal, therefore, will have to come by other means.

### B. Pleading Direct vs. Derivative Claims

Defendants next argue that plaintiff improperly pleads derivative claims subject to dismissal. Defendants view plaintiff as a "disgruntled minority LLC member" seeking to vindicate "rights only the LLC may properly assert." (Doc. 20, at 6.) And to assert the LLC's rights in a derivative action, defendants argue that plaintiff needed, but failed, to comply with Federal Rule of Civil Procedure 23.1(a)'s pleading requirements.

Plaintiff responds that his complaint focuses—not on how he and other of the LLC's members were treated as members, but—on "the process by which he became a member" of the LLC. (Doc. 18, at 8.) His "principal grievance" concerns defendants' misrepresentations. (Doc. 18, at 7; *see also* Doc. 22, at 4 ("These falsehoods are the crux of his actions.").) Those pre-investment misrepresentations,

---

[5] The result could be different if the LLC were a necessary party. *See supra* note 4. Given plaintiff's representations and the court's analysis, however, the court need not undertake that analysis.

[6] Jurisdiction and venue are, of course, distinct. *See Ford v. Valmac Indus., Inc.*, 494 F.2d 330, 331 (10th Cir. 1974) ("Jurisdiction is the power to adjudicate and venue is where judicial authority may be exercised."). But mindful of defendants' pro se status, the court would note that defendants' argument "that Oregon is the proper jurisdiction" would fail even if construed as an argument for dismissal under Rule 12(b)(3) that Oregon is the proper venue. (Doc. 20, at 6). While Oregon may be *a* proper venue if "a substantial part of the events or omissions giving rise" to plaintiff's claims occurred there, it would not be *the only* proper venue. 28 U.S.C. § 1391(b)(2). Venue is proper in this district, too, given that both defendants reside in Kansas. *See* 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located); *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010) (noting that the statute "contemplates that venue can be appropriate in more than one district").

according to plaintiff, caused "a harm distinct to him and separate from harm to the [LLC]." (Doc. 18, at 9.) Stated otherwise by plaintiff:

> The failure of the [d]efendants to manage the company or to discharge their fiduciary duties with respect to the use and safekeeping of the Company's funds is separate and distinct from their misrepresentations to [plaintiff]. In the absence of the [d]efendants' misrepresentations, he would not have invested in the [LLC]. [Plaintiff] can press a claim against [d]efendants for misrepresentation separate from the [LLC's] claim against [d]efendants for mismanagement and embezzlement.

(Doc. 22, at 4.) Plaintiff further assures that he "can refine his pleading to avoid any misunderstanding that he is asserting a derivative claim," including dismissing his conversion and accounting claims. (Doc. 22, at 4; *see also* Doc. 18, at 10 ("To the extent [plaintiff's] conversion and accounting torts could be construed as derivative, . . . he can dismiss those claims . . . .").)

Whether plaintiff brings direct or derivative claims is a substantive-law question, for which this court, sitting in diversity, looks to state law. *See U.S. Cellular Inv. Co. of Okla. City, Inc. v. SW. Bell Mobile Sys., Inc.*, 124 F.3d 180, 181 (10th Cir. 1997) ("[W]e first ask whether this action is a direct action or a derivative one. In a diversity case, the characterization of an action is a state law question."); *Freeman v. Premium Nat. Beef, LLC*, No. CIV-12-1390-D, 2013 WL 5441349, at *5 (W.D. Okla. Sept. 27, 2013) (following *U.S. Cellular's* state-law approach to resolve whether the individual brought direct claims or derivative claims on an LLC's behalf). The parties agree that, under Kansas's choice-of-law rules, Oregon law governs this dispute.[7] (Doc. 18, at 4–7 ("Oregon law applies to [plaintiff's] substantive claims."); Doc. 20, at 2–6 ("Oregon law applies to [plaintiff's] substantive tort claims.").) Given the parties' agreement, this court will assume Oregon's substantive law controls. *See In re ZAGG Inc.*

---

[7] Defendants suggest that Arizona law might also apply to certain of plaintiff's claims, speculating that plaintiff felt his injuries on those claims in Arizona. (Doc. 20, at 5–6.) But the court accepts plaintiff's representation that "the financial harm [he] has suffered occurred in Oregon. Under [his] tort theory, Oregon law applies." (Doc. 18, at 6.)

*Shareholder Derivative Action*, 826 F.3d 1222, 1228 (10th Cir. 2016) ("The parties agree that Nevada law should apply . . . ; and we see no reason to search for a reason to disagree.").

Oregon law provides no clear rules for distinguishing between derivative claims pleaded on a limited liability company's behalf and direct claims pleaded on an individual's behalf. It does, however, provide clear rules in the corporate context. In that context, whether the corporation is closely held or not, Oregon recognizes the general rule that "a stockholder of a corporation has no personal right of action against directors or officers who have defrauded or mismanaged it and thus affected the value of [shareholder] stock." *Smith v. Bramwell*, 31 P.2d 647, 648 (Or. 1934). But "recognized and logical exception[s] to the general rule" exist. *Weiss v. NW. Acceptance Corp.*, 546 P.2d 1065, 1069 (Or. 1976); *see also Loewen v. Galligan*, 882 P.2d 104, 111 (Or. App. 1994).

> [A] stockholder may have an individual cause of action against a third party if the third party breaches a duty directly owed to the stockholder as an individual. The stockholder may maintain such a cause of action although it is based upon the conduct of a third party which also creates a cause of action in the corporation.

*Weiss*, 546 P.2d at 1069; *Smith*, 31 P.2d at 650 ("'[W]here the wrongful acts are not only wrongs against the corporation, but are also violations by the wrongdoer of a duty arising from contract or otherwise, and owing directly by him to the stockholders,' an individual action c[an] be maintained."). Another exception applies if the shareholder suffers "a wrong . . . not suffered by all shareholders generally" or, as articulated in the close corporation context, "harm to themselves distinct from the harm to the corporation." *Loewen*, 882 P.2d at 111; *Noakes v. Schoenborn*, 841 P.2d 682, 686 (Or. App. 1992). Oregon law has extended these rules to limited partnerships. *See Hawkins v. 1000 Ltd. P'ship*, 388 P.3d 347, 364 (Or. App. 2016) ("The principles traced in *Calpner*"—principles like those announced in *Lowen*—"although originating in corporation law, are applicable to derivative actions by limited partners, who are analogous to shareholders in relevant respects."). And elsewhere, Oregon law has considered "derivative actions by shareholders against directors" to be a context "closely related" to

"member derivative actions in the LLC context." *Bernards v. Summit Real Estate Mgmt., Inc.*, 213 P.3d 1, 5 (Or. App. 2009).

This authority convinces the court that, under Oregon law, an LLC member states a direct as opposed to derivative claim by showing either: (1) the member suffered a special injury or harm uncommon to all other LLC members or (2) the alleged wrongdoer breached a contractual or other duty owed uniquely to the member as an individual. Satisfying either exception will make analyzing the other unnecessary. *See Wulf v. Mackey*, 899 P.2d 755, 757 (Or. App. 1995).

Under the special-injury or distinct-harm exception, plaintiff directly pleads a claim against defendants for misrepresentation. Taking plaintiff's allegations as true, defendants willfully or recklessly made misrepresentations directly to plaintiff, inducing him to contribute sums he would not have contributed otherwise. These misrepresentations to plaintiff did not diminish the LLC's value. To the contrary, the contributions these actions induced benefited the LLC. Plaintiff's damages do not flow from his interest in the LLC, therefore, but, in fact, *are* his interest. *See Reddy v. Morrissey*, Case No. 3:18-cv-00938-YY, 2018 WL 444164, at *4 (D. Or. Sept. 17, 2018) (characterizing as a "direct claim" one that regards one's personal property—i.e., "membership interest in [the LLC]"—without implicating the LLC's interests). Thus, plaintiff suffered a special injury or harm distinct from any felt by the LLC. This is true even though the factual misdeeds underlying defendants' misrepresentations— the fact that they failed to secure Mr. Marsden's services and products, for example—might also create a cause of action in the LLC. *See Weiss*, 546 P.2d at 1069 ("[A] stockholder may have an individual cause of action . . . although it is based upon the conduct of a third party which also creates a cause of action in the corporation.").

Other courts have found a direct cause of action for misrepresentation in similar situations. *See In re Palm Ave. Partners, LLC*, 576 B.R. 239, 256–57 (Bankr. M.D. Fla. 2017) (reasoning that LLC

members could sue for investments in the LLC induced by fraud, under the reasoning that "[t]he fraudulent inducement claim would not be to remedy a wrong *to* the corporation; it would be to remedy a wrong *by* the corporation," felt by each plaintiff in the "different, discrete amount" of their respectively induced investments); *Muccio v. Hunt*, No. CV-11-1273, 2014 WL 346929, at *5 (Ark. Jan. 30, 2014) ("If a plaintiff alleges fraud in the inducement to enter into a partnership agreement, then the claim is generally individual in nature, but if the plaintiff alleges fraudulent actions that primarily harm the partnership, then the action must be pleaded as a derivative suit."); *cf. Curtis v. United States*, 63 Fed. Cl. 172, 179 (2004) (recognizing "'fraud affecting [plaintiff] directly'" as a sufficient special injury to justify a direct as cause of action).

The court cannot say the same for plaintiff's other claims.

Plaintiff bases his breach of fiduciary duty claim in duties defendants owed "[a]s [m]anagers and officers of the [LLC]." (Doc. 1, at 3.) He claims their breaches impacted "the [LLC's] funds" and, thereby, made "his $200,000 investment [in the LLC] worthless." (Doc. 1, at 4.) Plaintiff's conversion claim similarly alleges that misappropriation "of [LLC] assets . . . decreased the value of the [LLC] and, thus, his investment in the [LLC]." (Doc. 1, at 7.) And his accounting claim also concerns breaches of a duty defendants owed "[a]s fiduciaries of the [LLC]." (Doc. 1, at 8.)

Each of these claims seeks redress of duties owed directly to the LLC and *all* its members, not any special duties owed exclusively to plaintiff. *See* Or. Rev. Stat. § 63.155 (discussing the fiduciary duties of loyalty and care owed to a member-managed limited liability company and its members, including: "[t]o account to *the limited liability company* and hold *for it* any property, profit or benefit . . ."); *Smith*, 31 P.2d at 619 (suggesting that a breach does "not confer upon the plaintiff a right to an individual and direct action, as distinguished from a derivative one, [when] any loss sustained by plaintiff by reason of the breach was, under the facts alleged, common to all stockholders."); *Lee v.*

*Mitchell*, 953 P.2d 414, 425 (Or. App. 1998) ("[P]laintiffs allege that [defendants] used their control over the corporation to pay themselves excessive salaries. . . . Nothing about that claim involves a duty that [defendants] owed to plaintiffs directly rather than . . . to [the corporation]. This is an exclusively derivative claim"); *cf. Finley v. Takisaki*, No. C05-1118JLR, 2006 WL 1169794, at *3 (W.D. Wash. April 28, 2006) ("Plaintiffs must allege that they suffered an injury distinct from those *of any other LLC member*.").

These claims involve mismanagement and misuse of the LLC's, not plaintiff's, assets. *See* Or. Rev. Stat. § 63.239 ("A member is not a co-owner of and has no interest in specific limited liability company property."); *Smith*, 31 P.2d at 649 ("'[U]nder any ordinary circumstances the fraud of the officers or managers of a corporation whereby its assets are misappropriated must be redressed by an action brought by the corporation to whom the assets belonged or by a stockholder derivatively in behalf of the corporation.'").

And, if true, plaintiff's allegations show he undoubtedly would sustain damage to the value of his investment in the LLC, but only indirectly and no more than suffered by any other LLC member. *See* Or. Rev. Stat. § 63.239 ("A membership interest is personal property."); Or. Rev. Stat. § 63.185 (stating that a limited liability company's losses shall be allocated among members equally if not otherwise allocated by the articles of organization or any operating agreement); *Smith*, 31 P.2d at 648–50 ("If plaintiff can maintain this action, then every other stockholder can do so;" "It must be apparent that . . . the damages sustained . . . were separate and distinct from those resulting to the other stockholders."); *Loewen*, 882 P.2d at 111–12 ("A special injury is established where there is a wrong suffered by the shareholder not suffered by all shareholders generally;" "A 'wrongful act that diminishes the value of stock and thereby injures shareholders only indirectly, by reason of the prior injury to the corporation, is derivative.'").

Only the LLC or a member acting on the LLC's behalf, therefore, not plaintiff in his individual capacity, has standing to seek redress against defendants for the alleged breaches of fiduciary duty, conversion, and failure to account. *See Lowen*, 882 P.2d at 112 (concluding that individual plaintiffs "do not have standing to bring direct claims for breach of fiduciary duty."); *Puri v. Khalsa*, 674 F. App'x 679, 688–90 (9th Cir. 2017) (treating plaintiffs' claim against Oregon LLC members for fraud as direct and plaintiffs' breach of fiduciary duty and conversion claims as derivative); *Westwood v. City of Hermiston*, 787 F. Supp. 2d 1174, 1188 (D. Or. 2011) (granting summary judgment on LLC members' intentional interference with business relationship claim because the claim involved the LLC's asset, a restaurant, and thus the LLC was "the only real party in interest"), *aff'd,* 496 F. App'x 728 (9th Cir. 2012); *McDonald v. Alayan Alayan*, No: 3:15-CV-02426-MO, 2016 WL 2841206, at *2 (D. Or. May 13, 2016) ("The text of [Or. Rev. Stat. § 63.155(2)(a)] outlines the accounting is to be made to the limited liability company. In order for the claim to proceed then, the company would have to bring it.").

Plaintiff, however, has not complied with the pleading requirements to initiate a derivative action. Plaintiff's complaint is not "verified;" it alleges no facts assuring that the action is not "one to confer jurisdiction that the court would otherwise lack;" and it fails to "state with particularity" facts showing, under Oregon law, that a demand to sue either was properly made on the LLC and refused or, if not made, would be futile. Fed. R. Civ. P. 23.1(b); *City of Cambridge Ret. Sys. v. Ersek*, 921 F.3d 912, 918 (10th Cir. 2019) ("Whether the complaint's particular allegations suffice [under Rule 23.1(b)(3)] depends upon the substantive law of the state in which the entity is incorporated"); *cf.* Or. Rev. Stat. § 63.801 (imposing pleading requirements similar to Fed. R. Civ. P. 23.1 on members seeking to initiate derivative proceedings on an LLC's behalf). And notwithstanding these deficiencies, plaintiff expresses

a willingness to dismiss any claims that "could be construed as derivative."[8] (Doc. 18, at 10; *see also* Doc. 22, at 4.)

Accordingly, the court dismisses without prejudice plaintiff's improperly pled breach of fiduciary duty, conversion, and accounting claims. The court denies, however, defendants' motion to dismiss plaintiff's properly pled misrepresentation claim.[9]

## IV. Defendants' Motion to Disqualify Plaintiff's Counsel

Left to decide is the matter of Mr. Laner's representation of plaintiff in this action. Defendants assert that Mr. Laner counseled and advised them on certain organizational and operational matters concerning various LLCs, including 63rd Street Enterprises, LLC. Defendants further represent that "e-mail transmissions from attorney Laner confirm[] his status as attorney and counsel for all parties." (Doc. 10, at 2.) Owing to this relationship, Mr. Laner allegedly "possesses all confidential disclosures, bank account particulars, company documents, notes, and other information relating to each Defendant and their joint business with Plaintiff." (*Id.*, at 3.) Accordingly, defendants argue, under Kansas Rules of Professional Conduct 1.6, 1.7, 1.8, 1.9, and 1.10, that Mr. Laner's representation of plaintiff violates duties of confidentiality owed them and raises a conflict of interest that should be imputed to all attorneys working at Mr. Laner's law firm.

---

[8] Given the pleading deficiency and plaintiff's eagerness "to avoid . . . asserting a derivative claim," the court need not determine whether the LLC is a necessary and indispensable party under Federal Rule of Civil Procedure 19 and, if so, how that fact would impact the court's subject-matter jurisdiction or Mr. Laner's ability to represent plaintiff. (Doc. 22, at 4.) Still, the court would note that "[c]ourts in [the federal district of Oregon] and around the country have found LLCs to be necessary parties where the claims implicate the interests of the LLC itself." *Reddy v. Morrissey*, No: 3:18-CV-00938-YY, 2018 WL 4844164, at *3 (D. Or. Sept. 17, 2018) (citing multiple cases).

[9] Citing *Grindsted Prods., Inc. v. Kansas City Power & Light Co.*, 901 P.2d 20 (Kan. App. 1995), defendants make a three-sentence argument that plaintiff failed to exhaust available dispute resolution procedures set out in the LLC's operating agreement. (*See* Doc. 20, at 9.) Defendants' argument, however, is underdeveloped. Defendants provide the court no details about the operating agreement's alleged exhaustion procedures. And as this case involves neither the Kansas Corporation Commission nor any like regulatory body, *Grindsted*'s discussion of administrative exhaustion has no bearing on this case.

Plaintiff opposes defendants' motion to disqualify Mr. Laner, arguing, with supporting affidavits, that Mr. Laner represented only defendants' LLCs, not defendants personally:

> In each and every instance, while Blake may have approached Laner about the engagement, the engagement that was solicited, and the engagement that occurred, related to organizations. At no time has Laner been requested to perform a single service or provide a word of counsel to Blake or Leonard in either's individual capacity.

(*See* Doc. 12, at 3.) By affidavit, Mr. Laner represents that his firm's billing records "do not reflect either [defendant] Christian Blake of Josh Leonard as a client," but instead list 63rd Street Enterprises, LLC and other entities as clients. (Doc. 12-1, at 2.)

By local rule, this court has adopted the Kansas Rules of Professional Conduct ("KRPC"). *See* D. Kan. R. 83.6.1(a). Those rules, and Kansas case law interpreting them, guide this court's determination whether an attorney has acted appropriately. *See Harris v. City of Kansas City*, No. 18-2084-JAR-GEB, 2019 WL 1367672, at *4 (D. Kan. Mar. 26, 2019); *Am. Plastic Equip., Inc. v. Toytrackerz, LLC*, No. 07-2253-DJW, 2009 WL 902424, at *6 (D. Kan. Mar. 31, 2009). Standards developed under federal case law, however, control whether an attorney's inappropriate conduct warrants disqualification. *Am. Plastic Equip.*, 2009 WL 902424, at *6; *see also Prof'l Serv. Indus., Inc. v. Kimbrell*, 758 F. Supp. 676, 680 (D. Kan. 1991) ("An ethical violation does not automatically trigger disqualification."). Here, the burden of showing a prima facie case that disqualification is warranted belongs to defendants, as the moving party. *Lowe v. Experian*, 328 F. Supp. 2d 1122, 1125, (D. Kan. 2004). "[C]onclusory assertions that 'an inherent conflict' exists [do] not . . . satisfy their burden. . . ." *Id.* at 1129. And while an evidentiary hearing may be necessary to resolve a motion to disqualify in some instances, no hearing is required here: the parties have fully briefed their positions; no disputes exist as to the material facts, (only the interpretation of those facts); and neither party has requested such a hearing. *Id.*; *Layne Christensen Co. v. Purolite Co.*, No. 09-2381-JWL-GLR, 2011 WL 1113543, at *6 (D. Kan. Mar. 24, 2011).

Defendants' proposed application of certain Kansas professional conduct rules to Mr. Laner initially turns on a single threshold issue: whether defendants and Mr. Laner formed an attorney-client relationship that would subject Mr. Laner (and by extension his firm) to the rules' ethical obligations of confidentiality and loyalty. *See Cole v. Ruidoso Mun. Schls.*, 43 F.3d 1373, 1384 (10th Cir. 1994); *Kimbrell*, 758 F. Supp. at 681 (KRPC "Rules 1.6 through 1.10 operate to safeguard the confidences of a 'client.' Consequently, the obvious first question is whether an attorney-client relationship ever existed . . . ."). In Kansas, an attorney-client relationship can be formed only by agreement, "express or implied." *State v. Drach*, 1 P.3d 864, 871 (Kan. 2000). An implied attorney-client relationship is recognized only where the purported client "sought and received *personal* legal advice from the attorney." *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 975 P.2d 231, 236 (Kan. 1999) (emphasis added); *see also Kimbrell*, 758 F. Supp. at 682 (citing multiple Kansas cases where "the attorney-client relationship was recognized because the client had sought and received personal legal advice from an attorney.").

Here, prima facie evidence of an express or implied attorney-client relationship between Mr. Laner and defendants is lacking. In response to defendants' representation that "e-mail transmissions from attorney Laner confirm[] his status as attorney and counsel for all parties," the court directed defendants to submit "any e-mails they contend support their motion to disqualify." (Doc. 10, at 2; Doc. 15, at 2.) Having reviewed defendants' submission, the emails on which defendants rely do not establish an attorney-client relationship between themselves personally and Mr. Laner. The emails (and defendants' briefing) reflect few if any of the express terms of Mr. Laner's representation, and thus do not confirm his status as attorney *for defendants*. The emails (and defendants' briefing) also reflect no evidence of *personal* advice sought and received by defendants that would support finding an implied

attorney-client relationship.[10] *See Kimbrell*, 758 F. Supp. at 682 (denying motion to disqualify counsel where movant, a "sophisticated businessman who must be imputed with the knowledge of corporate workings and the primary role of counsel for the corporation," "never sought nor obtained . . . legal advice or assistance on an personal legal issue."). Rather, the emails simply discuss "services" related to "business" "referred" to Mr. Laner from defendant Blake, for which defendant Blake offered to pay using—not personal funds, but—"the company credit card." (Doc. 20-1, at 1–2.) This does nothing to rebut Mr. Laner's sworn declarations that neither he nor his firm have ever contracted with, billed, or advised defendants in their individual capacities. (Doc. 12-1, at 1–4.) *Layne Christensen Co.*, 2011 WL 1113543, at *6 (rejecting like motion where plaintiffs "provided no information . . . that would contradict or refute any of [the attorney's] declarations."). Defendants themselves even characterize Mr. Laner not as their own personal counsel but as the "hired . . . general counsel of . . . 63rd Street Enterprises, LLC." (Doc. 10, at 2.) An attorney-client relationship is not proved by evidence the movant consulted with an organization's attorney "only for the purpose of carrying out . . . duties" on an organization's behalf. *Cole*, 43 F.3d at 1384–85.

As defendants fail to make a prima facie case that Mr. Laner was anything other than the LLC's attorney, they lack standing to seek Mr. Laner's disqualification. *See Lowe*, 328 F. Supp. 2d at 1128 ("Generally speaking, only the client has standing to move to disqualify under [Kansas' rules of professional conduct]."). In Kansas, "a LLC—similar to a corporation—is 'a *separate legal entity. . .* ,'" and as such, "'an attorney's duties to a limited liability company run only to the company

---

[10] And while Mr. Laner represents he "advised Christian Blake while he served in a constituent capacity as Manager of 63rd Street Enterprises LLC as to certain acts he should undertake, such as assuring the transfer of assets to 63rd Street Enterprises LLC or complying with rules and procedures applicable to private offering of securities," defendants make no assertion that Mr. Laner advised any of the actions alleged to have defrauded plaintiff. (Doc. 12, at 3.)

itself and not to its members.'" *White ex rel. B.W. II, LLC v. Barbieri*, 284 P.3d 375, 2012 WL 3966527, *4 (Kan. Ct. App. 2012); *see also Kimbrell*, 758 F. Supp. at 681 ("'The basic precept of Rule 1.13 is that a lawyer representing an entity client does *not* thereby (and without more) become the lawyer for any of the entity's members, agents, officers, or other "constituents" . . . ; the lawyer instead represents the entity itself.'"). Because Mr. Laner (and by extension his firm) owed defendants in their individual capacities no duties of confidentiality or loyalty, the court denies defendants' motion to disqualify plaintiff's attorney.[11]

**IT IS THEREFORE ORDERED** that defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Other Reasons (Doc. 19) is granted in part and denied in part. Defendants' motion is granted as to Counts 1, 3, and 4; those counts are dismissed without prejudice. Defendants' motion is denied as to Count 2.

**IT IS FURTHER ORDERED** that defendants' Motion to Disqualify Counsel (Doc. 9) is denied.

Dated August 12, 2019, at Kansas City, Kansas.

                                                   s/ Carlos Murguia
                                                 **CARLOS MURGUIA**
                                                 **United States District Judge**

---

[11] Were the LLC's involvement in this suit necessary, however, Mr. Laner's prior representation of the LLC would, by plaintiff's own admission, "disqualify [Mr. Laner] from representing [him] in this lawsuit." (Doc. 18, at 14.)