**In the United States District Court
for the District of Kansas**

———————

Case No. 18-cv-02247-TC-JPO

———————

JEFFREY S. GREEN,

*Plaintiff/Counterclaim-Defendant*

v.

CHRISTIAN BLAKE, ET AL.,

*Defendants/Counterclaim-Plaintiffs*

———————

**MEMORANDUM AND ORDER**

This is a dispute between three individuals concerning the operation of a limited liability company. Doc. 1. The parties have filed three motions: (i) Defendants Blake and Leonard's motion for leave to add third-party claims against Plaintiff Green's attorney, Joel Laner, Doc. 119; (ii) Green's motion to dismiss the counterclaims against him, Doc. 125; and (iii) Green's motion to strike Defendants' reply in support of their motion for leave, Doc. 130. For the following reasons, Green's motion to dismiss is granted in part and denied in part, Green's motion to strike is denied, and Defendants' motion for leave is denied.

**I**

**A**

**1.** This case stems from a soured business relationship. Plaintiff Jeffrey Green is an Arizona resident and investor in 63rd Street Enterprises LLC, an Oregon cannabis-farming entity. Doc. 117 at ¶¶ 1, 10–11; Doc. 118 at 1, ¶ 3. Defendants Christian Blake and Joshua Leonard are Kansas residents and former managers and officers of that LLC. Doc. 117 at ¶¶ 2–3; Doc. 118 at 1, ¶¶ 1–2. Joel Laner is Green's counsel in this dispute and has also served as the LLC's corporate counsel. *See* Doc. 118 at 8, ¶¶ 22, 24.

According to Green, Defendants misled him into investing in the LLC and then, prior to their ouster by a majority vote of the LLC's members and managers, Defendants grossly mismanaged the entity such that its value suffered. To support these claims, Green alleges that, when he began interacting with the LLC, Defendant Blake was not only a member and manager but also the president, secretary, and treasurer of the company. Doc. 117 at ¶ 6. Defendant Leonard was a member, manager, and CEO. Doc. 117 at ¶ 7. Green contends that in April 2018, the members removed both Defendants as managers, and a "newly constituted Board of Managers" removed them as officers, for cause. Doc. 117 at ¶¶ 6–7. The LLC, meanwhile, had become insolvent. Doc. 117 at ¶¶ 9, 16; *see also* Doc. 1 at ¶¶ 16, 27–28, 31–33 (now dismissed). Green claims he has invested in and/or loaned to the LLC at least $223,501.00, has recovered only $10,000.00, and would not have parted with this money but for a laundry list of Defendants' misrepresentations. Doc. 117 at ¶¶ 10–17.

Defendants, naturally, have a different view. They claim that Green acted by fiat to remove them from their manager and officer roles, took control of the LLC's assets himself, and then grossly mismanaged the entity such that its value suffered.

In support of these claims, Defendants allege the member-managed LLC had six members, including themselves, each of whom held a single, non-assignable vote. Doc. 118 at 6–7 ¶¶ 8–12. Those members appointed five managers, one of whom was Green. Doc. 118 at ¶ 13. Green was an investor and the company's vice president, but held no voting rights. Doc. 118 at 7, ¶¶ 10, 13, 16. The parties dispute which operating agreement governs the company. Defendants allege that the Second Operating Agreement, signed in 2017, controls, Doc. 118 at ¶ 10, whereas Green contends a more recent operating agreement now controls, *see* Doc. 126 at 4.

Defendants allege that, contrary to what the Second Operating Agreement allowed, Green acted unilaterally and without a member vote to divest Defendants of their management roles and officer positions. Doc. 118 at 8, ¶¶ 20–24. Defendants learned of Green's action from a letter written by Laner in his capacity as the LLC's counsel but allegedly penned at Green's sole discretion. Doc. 118 at 8, ¶¶ 20–24. Defendants further allege that Green acted to exclude them from the office, books, accounts, and records, effectively excluding them from their membership interests. Doc. 118 at 8, ¶ 18. Finally, Defendants

2

assert it was Green's conduct, in their absence, that bled the LLC of its assets. Doc. 118 at 9, ¶ 32.

**2.** These competing positions spawned this protracted litigation, which, to date, has lasted three years. Because resolution of the three current motions implicates past pleadings and rulings, a brief summary of the many disputes is necessary.

The case began with Green alleging that Defendants made misrepresentations to induce Green to invest, breached their fiduciary duties to LLC members, converted LLC assets for personal use, and then failed to produce a required accounting. *See generally* Doc. 1. All told, the Complaint asserted four separate counts.

Defendants, proceeding *pro se*, moved for dismissal on the basis that Green lacked standing. Doc. 19. Judge Murguia issued a decision that largely agreed with Defendants: "Because plaintiff properly pleads one direct claim [for misrepresentation] and improperly pleads three derivative claims, defendant's motion to dismiss is denied in part and granted in part." Doc. 32 at 1. Except for Green's misrepresentation claim, Judge Murguia determined that his claims concerned harm to the LLC and its stakeholders collectively, making the claims derivative and, therefore, subject to Fed. R. Civ. P. 23.1. Because Green had not complied with Rule 23.1, those claims were dismissed. Doc. 32 at 11–12.

Defendants also moved to disqualify Green's attorney, Laner. Doc. 9. Defendants argued that Laner had previously represented Defendant Blake in his individual capacity and served as counsel for a different entity Defendants owned, Hidden Street Ventures. Finding that Defendants had failed to make even a prima facie showing that Laner had ever represented either Defendant in their individual capacity, Judge Murguia denied the motion. Doc. 32 at 12–16.

Following that ruling, Green filed two motions. He sought leave to file an amended complaint under Rule 23.1 for derivative claims, Doc. 39, and a motion under Rule 20 to add Defendant Blake's wife as a defendant and himself as a plaintiff, derivatively on behalf of the LLC, Doc. 37. Judge O'Hara concluded that adding the LLC would destroy diversity jurisdiction and recommended denying leave to amend as futile and denying leave to add parties as moot. Doc. 48 at 2. As a result, Green withdrew his joinder motion. Doc. 49.

Following more non-dispositive motion practice, Defendants, still proceeding *pro se*, again moved for dismissal. Doc. 69. Judge Melgren denied the second motion to dismiss, concluding Green had sufficiently stated a misrepresentation claim. Doc. 107. Thereafter, Green sought and obtained leaved to file the now-operative complaint, which pleads a single misrepresentation claim. Doc. 117.

**3.** Defendants, now with the aid of counsel, fired back. The motions currently at issue are related to or spawn from their response to Green's current complaint.

Defendants not only filed a timely Answer to Green's First Amended Complaint, but they also asserted seven counterclaims against Green. Doc. 118. The counterclaims include conversion, waste, fraud/fraud on the court, abuse of process, declaratory judgment, breach of fiduciary duties, and punitive damages. Doc. 118. In addition, Defendants moved for leave to file third-party claims against Green's lawyer, Laner, for fraud/fraud on the court, breach of fiduciary duties, abuse of process, and punitive damages. Doc. 119; *see also* Doc. 32 (denying Defendants' motion to disqualify Laner).

Green, in turn, filed two motions. In the first, he sought to dismiss Defendants' counterclaims for failure to state a claim on which relief may be granted. Doc. 125. The second is a motion to strike Defendants' reply in support of their motion for leave to add Laner. Doc. 130.

**B**

Each of the pending motions relate to Defendants' attempt to add counter- and third-party claims. Although they arise under different procedural rules, the plausibility standard governs both the motion to dismiss and the motion for leave.

**1.** Green moves to dismiss the counterclaims pursuant to Rule 12(b)(6) for failure to state a claim. To state a claim, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Tenth Circuit has summarized two "working principles" that underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, the Court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Iqbal*, 556 U.S. at 678–79; *Kan. Penn Gaming,*

656 F.3d at 1214. Second, the Court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Kan. Penn Gaming*, 656 F.3d at 1214.

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from merely conceivable to actually plausible. *Id.* at 678–80. The "mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis original).

Plausibility, like most things in life, depends on context. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). The nature and complexity of the claim define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

Scrupulous adherence to this standard helps deliver the "just, speedy, and inexpensive determination" of claims promised in Fed. R. Civ. P. 1, by ensuring fair notice to defendants and by permitting the termination of meritless claims before "ginning up the costly machinery associated with our civil discovery regime." *Kan. Penn Gaming*, 656 F.3d at 1215.

**2.** Federal Rule of Civil Procedure 15 governs Defendants' motion for leave to add a claim against Laner. *See also United States ex rel. Precision Co. v. Koch Indus., Inc.*, 31 F.3d 1015, 1018–19 (10th Cir. 1994). It provides that a party may freely amend once as of right during a limited period of time. Fed. R. Civ. P. 15(a)(1). After that, parties may amend only with consent or leave of the Court, which the Court should give freely "when justice so requires." Rule 15(a)(2). But justice does not "so require" in the event of undue delay, undue prejudice, bad faith, failure to cure deficiencies by prior amendment, or futility. *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010).

5

Futility—which Green argues here—dooms a proposed pleading when the claims, as amended, would be subject to dismissal. *TV Commc'n Network, Inc. v. Turner Network Tele., Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992). Thus, the Rule 12 motion-to-dismiss standard also governs Defendants' motion for leave. *See also Pedro v. Armour Swift-Eckrich*, 118 F. Supp. 2d 1155, 1158 (D. Kan. 2000).

## II

Green's motion to dismiss is granted in part and denied in part.[1] As set forth below, several—but not all—of the counterclaims lack fact allegations tending to show a plausible entitlement to relief. One of the plausible claims, however, implicates Rule 19 and threatens to undermine jurisdiction. As a result, Defendants shall show cause by May 28, 2021, why their counterclaims should not be dismissed.

In addition, Defendants' motion for leave to add third party Laner to this litigation is denied. Their proposed claims against Laner fail to show a plausible entitlement to relief and are, therefore, futile.

### A

#### 1

Defendants' causes of action asserting liability under the theories of waste, fraud, abuse of process, and for punitive damages do not state plausible claims as a matter of law. As a result, Green's motion to dismiss is granted as to those claims.

**a.** For their waste counterclaim, Defendants allege that Green diminished the LLC's assets and value through poor management and lack of ordinary care. Doc. 118 at 9, ¶ 32. But as Green correctly argues—and Defendants' response, Doc. 129, does not dispute—the waste counterclaim alleges harm to the company; the Defendants are

---

[1] Green's motion relies on several affidavits submitted with the motion. Doc. 126 at 2–4. Neither these affidavits nor Defendants' similarly extraneous attachments, Docs. 129-1 & 129-2, will be considered. These extraneous items were not referenced in the Complaint, are not central to the claims, and are not indisputably authentic. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (2002). And Green's request to convert this motion into one for summary judgment, Doc. 126 at 2, is denied because he has not complied with Fed. R. Civ. P. 12(d), Fed. R. Civ. P. 56, or D. Kan. R. 56.1.

only harmed in their role as stakeholders. Doc. 126 at 6. They do not allege any distinct injury or unique duty owed to either Defendant.[2] *See* Doc. 32 at 5–12 (citing Oregon law); *Lightner v. Lightner*, 266 P.3d 539, 547–52 (Kan. Ct. App. 2011) (defining derivative actions under Kansas law). In other words, the waste counterclaim belongs to the company and not to Defendants individually. Consequently, these allegations advance a derivative claim of the same type Judge Murguia already analyzed and dismissed from Green's Complaint. Doc. 32 at 5–12. Thus, Defendants could only bring the waste claim as a derivative action pursuant to Fed. R. Civ. P. 23.1, which they have declined to do. Their waste counterclaim is dismissed for lack of standing.

**b.** The counterclaim for fraud and/or fraud upon the court is also dismissed. Defendants generically allege that Green made untrue representations on which Defendants relied. But this bald recitation of elements does not satisfy the plausibility standard for ordinary claims, much less the heightened requirements for fraud claims. *See* Fed. R. Civ. P. 9(b) (requiring parties alleging fraud to "state with particularity the circumstances constituting fraud or mistake").

Under either Kansas or Oregon law, the elements of an ordinary fraud claim are demanding. A plaintiff must allege that (i) a person made material false statements to induce the plaintiff to act, (ii) the person either knew the statements to be false or made them without knowledge, (iii) the plaintiff reasonably relied and acted upon the statements, and (iv) the plaintiff incurred damage by this reliance. *See Kelly v. VinZant*, 197 P.3d 803, 808 (Kan. 2008); *Riley Hill General Contractor, Inc. v. Tandy Corp.*, 737 P.2d 595, 604 (Or. 1987) (en banc).

Defendants' fraud counterclaim fails to satisfy those elements. The counterclaim ambiguously references "untrue representations . . . set forth more particularly above [in the common allegations section]." Doc. 118 at 11, ¶ 48. But a review of those common allegations reveals no specific circumstances constituting fraud. *See* Fed. R. Civ. P. 9(b). In their Response, Defendants assert that Green acted fraudulently by

---

[2] The parties disagree as to whether Kansas or Oregon law applies but fail to offer either reasoning or sufficient facts to allow a determination. Fortunately, it appears that the substantive law is not determinative of the success or failure of these claims. Going forwar d, the parties are strongly encouraged to meaningfully consider and demonstrate which state's substantive law controls.

7

sending Defendants the removal letters knowing he lacked authority to remove them. Doc. 129 at 7–8. Whether Green had legal authority is a separate question from whether Green made false statements. No party contends that the removal did not occur or that the letters' announcements were counterfactual. At most, one could infer that Defendants believe the letters' discussion of "Members" taking action was false, but Rule 9(b)'s pleading standard will not indulge that tenuous sort of inference. *See United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171–72 (10th Cir. 2010).

Even if that inference were credited, the counterclaim still fails. The allegations do not identify what action, if any, Defendants took in reliance on Green's representation. There is no allegation that Defendants resigned, consented to their removal, or otherwise changed their positions based on any representation. Instead, Defendants allege that Green acted without authority and then informed Defendants *after* the act was fully concluded. That fails to meet the essential reliance element under either Kansas or Oregon law. *See Minn. Ave., Inc. v. Automatic Packagers, Inc.*, 507 P.2d 268, Syl. ¶ 3 (Kan. 1973); *Slaymaker v. Westgate State Bank*, 739 P.2d 444, 453 (Kan. 1987); *Andrews v. Roy Motors*, 283 P.2d 652, 654 (Or. 1955).

The fraud on the court claim also fails. Such claims are for conduct directed at the judicial machinery itself—not fraud between the parties, fraudulent documents, false statements, or perjury. *See, e.g., J-F Oil, LLC v. Lansing Energy Corp.*, No. 91891, 2005 WL 742073, at *5 (Kan. Ct. App. Apr. 1, 2005) (quoting *Weese v. Schukman*, 98 F.3d 542, 552 (10th Cir. 1996)); *see also Chase v. Gordon, Aylworth & Tami, P.C.*, No. 18-00568, 2020 WL 1644310, at *9–10 (D. Or. Feb. 14, 2020).

Defendants' counterclaim lacks allegations—conclusory or otherwise—that could satisfy that tort's basic elements. "'[O]nly the most egregious misconduct, such as bribery . . . or the fabrication of evidence . . . will constitute fraud on the court. Less egregious misconduct, such as nondisclosure to the court of facts . . . will not ordinarily rise to the level of fraud on the court.'" *J-F Oil*, 2005 WL 742073, at *5

(quoting *Weese*, 98 F.3d at 552–53); *see Chase*, 2020 WL 1644310, at *9.[3] In stark contrast to this high bar, neither the counterclaim nor Defendants' response even attempts to distinguish between fraud and fraud upon the court. Instead, Defendants rely on the same set of conclusory allegations to support both claims. That will not do.

**c.** Similarly, Defendants' abuse of process claim is deficient. They allege that Green's initiation of this suit was meritless, fraudulent, and intended to harass. The allegations are largely conclusory, but looking only at the facts alleged, Defendants assert that Green knew his claims on behalf of the LLC were meritless and that legal action would "place [Defendants] in an untenable position from which it would be difficult to defend themselves." Doc. 118 at 11, ¶¶ 54–55.

In both Kansas and Oregon, an abuse of process claim requires (i) improper use of the judicial process, (ii) an illegal or improper motive or purpose for engaging the legal process, and (iii) damages suffered as a result of that improper process. *See generally Porter v. Stormont-Vail Hosp.*, 621 P.2d 411, 416 (Kan. 1980); *see also Larsen v. Credit Bureau, Inc. of Ga.*, 568 P.2d 657, 658 (Or. 1977) (reciting similar elements). Defendants' allegations do not, on their face, state a viable abuse of process claim.

First, while some of Green's claims have been dismissed, that dismissal was for lack of standing—not because the claims were inherently meritless or facially illegitimate. *Compare* Doc. 32 at 5–12, *with* Doc. 107. Further, to the extent Defendants allege that Green's remaining claims are ultimately "fraudulent and meritless," abuse of process is neither a proper cause of action nor one whose elements are plausibly satisfied by the allegations here.

Second, it is no abuse of process for a party to make strategic, tactical choices in pursuing his or her rights under the law. Green and the

---

[3] It is not clear that fraud on the court can even stand as an independent cause of action, rather than as a finding required to overturn a prior judgment. Fed. R. Civ. P. 60(b)(3), (d); K.S.A. 60-260(b)(3), (d); *see also Atkins v. Heavy Petrol. P'ners, LLC*, No. 14-4016, 2014 WL 4657105, at *11 (D. Kan. Sept. 17, 2014); *Rote v. Marshall*, No. 19-00082, 2019 WL 4246692, at *3 (D. Or. Sept. 6, 2019). But the parties have not briefed the issue, and because Defendants have not plausibly alleged the elements of fraud on the court, the Court need not reach the question.

Defendants disagree about what their respective rights are, but a disagreement about the law's application falls short of being actionable: "The tendency is to jump to the conclusion that every lawsuit that misfires or fails is an abuse of process. Needless to say, this is not true." *Tappen v. Ager*, 599 F.2d 376, 379 (10th Cir. 1979). Instead, abuse of process is a "very narrow" remedy reserved for those rare instances when a party has worked "some extortionate perversion of lawfully initiated process to illegitimate ends." *Id.* at 379–80; *accord Larsen*, 568 P.2d at 658. Defendants' allegations—that Green made use of ordinary litigation processes to file a lawsuit that Defendants believe is meritless, Doc. 118 at 11, ¶¶ 54–55—do not rise to this level.

**d.** Finally, Green requests dismissal of Defendants' separate counterclaim for punitive damages. Green correctly asserts—and Defendants do not contest—that punitive damages are a category of relief and not a separate cause of action. *Howell Petrol. Corp. v. Leben Oil Corp.*, 976 F.2d 614, 622 (10th Cir. 1992); *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1554 (10th Cir. 1991). The counterclaim for punitive damages is hereby dismissed. The parties do not address whether punitive damages, which Defendants seek in their prayer for relief, are properly claimed for any of Defendants' remaining counterclaims. That issue will be considered at an appropriate time if the parties elect to fully brief the matter.

### 2

Defendants' remaining three claims state a plausible entitlement to relief: conversion, declaratory judgment, and breach of fiduciary duties claims. As a result, Green's motion to dismiss is denied as to those claims.

**a.** A party sufficiently states a conversion claim by alleging the unauthorized exercise of ownership rights, dominion, or control over personal property belonging to another, either to the exclusion of the other, *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 378 P.3d 1090, 1095–96 (Kan. 2016), or resulting in a sufficiently serious interference with the other's rights, *Becker v. Pac. Forest Indus., Inc.*, 211 P.3d 284, 287 (Or. Ct. App. 2009).

Defendants' counterclaim alleges adequate facts to state such a claim. In particular, Defendants allege they had an ownership interest in the LLC and worked as officers and managers for it. Doc. 118 at 4–5 & 7, ¶ 13. They state Green improperly removed them from

management, blocked them from exercising their ownership rights, and has himself exercised ownership rights by seizing company assets and reconfiguring decision-making processes.

Green makes three arguments to the contrary. Each fails. For example, Green contends that, contrary to what Defendants allege, he did not act unilaterally or without authority, Doc. 126 at 2–4, and Defendants' membership interests were not cancelled when their employment was terminated, Doc. 132 at 6. In support, Green points to and relies on the substance of the aforementioned affidavits and extraneous information. That extraneous evidence, however, cannot be considered at the Rule 12 stage. *See* n. 1 *supra*.

In addition, Green's other two arguments fare no better. Specifically, Green asserts that Defendants allege conversion of a company, and because a company is "an amorphous concept … not equatable to personal property" it cannot be converted. Doc. 126 at 5. Further, Green alleges that Defendants did not individually own any company asset allegedly converted. Doc. 126 at 5.

Both Kansas and Oregon law undermine Green's position. Each recognizes that an ownership interest in a company is personal property, albeit of a partially intangible nature. Or. Rev. Stat. § 63.239; K.S.A. § 17-76,111; *see also Near v. Crivello*, 673 F. Supp. 2d 1265, 1281–82 (D. Kan. 2009). Defendants allege that Green excluded them from enjoying their ownership rights when he exercised complete control over the company and then prevented Defendants' access to the company's office, books, accounts, and data . Doc. 118 at 8, ¶¶ 18–24. That, for purposes of a Rule 12 motion, is sufficient to state a claim of conversion. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (recognizing that a complaint "does not need detailed factual allegations" and need not persuade the Court of a likelihood of recovery, but need only "be enough to raise a right to relief above the speculative level").

Finally, permitting Defendants to pursue a conversion claim is not inconsistent with the Court's prior rulings. Unlike Judge Murguia's rejection of Green's derivative claims for conversion of company assets, Doc. 32 at 11–12, or Defendants' waste claim, *see* Part II.A.1.a. *supra*, Defendants' conversion claim alleges that Green assumed their individual rights of ownership in said company. *See generally* Doc. 118. Therefore, their claims describe individual harm rather than a derivative, corporate loss. *See* Doc. 32 at 5–12 (describing derivative claims

11

under Oregon law); *Lightner*, 266 P.3d at 547–52 (explaining derivative claims under Kansas law).

**b.** Defendants also assert a claim for declaratory judgment, seeking a declaration as to which operating agreement currently controls and what the parties' rights are relative to that agreement. Doc. 118 at 12, ¶¶ 57–60. Green, arguing the claim fails to state a cause of action, seeks dismissal.

While Defendants have stated a viable claim for declaratory relief, this cause of action again raises the Fed. R. Civ. P. 19 issues Judge O'Hara found. *See* Doc. 48 at 2–10. As a result, Defendants are directed to show cause by May 28, 2021, why the entire action should not be dismissed for failure to join all necessary and indispensable parties.

**(i)** Congress authorized federal courts to hear declaratory judgment actions so long as jurisdiction exists and the matter presents an actual case or controversy. 28 U.S.C. § 2201 *et seq.* Here, Defendants allege that Green, individually, is in improper possession of company assets and has unilaterally removed Defendants from management and membership in contravention of governing business agreements. Doc. 118 at 8, ¶¶ 18–24. Among other relief, Defendants request a judicial declaration as to which of the competing operating agreements is operative, what rights the LLC members enjoy(ed), and whether Green had the authority to act as he did. This is sufficient. *Cf. Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240, 1244–45 (10th Cir. 2008) (recognizing that a declaratory judgment action was proper where "the facts alleged . . . show there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment").[4]

Green's contrary arguments do not support dismissal. He first states that no declaratory relief is needed because he does not dispute certain allegations. Doc. 132 at 7. But that does not invalidate the

---

[4] The Tenth Circuit has clarified there are actually two considerations: (i) a mandatory requirement of actual controversy and, assuming a controversy exists, (ii) a discretionary ability for courts to exercise or decline jurisdiction. *Surefoot*, 531 F.3d at 1240. While Green has contested the actual controversy requirement, neither party has suggested the Court should decline to exercise jurisdiction if it exists. *See* Doc. 126 at 7.

declaratory judgment claim. Rather, it might assist Defendants in proving the claim or helping to minimize the disagreement. To the extent the parties agree on any facts surrounding the declaratory judgment claim, they are invited to stipulate or otherwise narrow the disputed issues.

**(ii)** While the parties vigorously debate whether Defendants' declaratory judgment cause of action is viable, there is no discussion about what impact that claim will have on this Court's jurisdiction. Specifically, the request for a definitive ruling on the rights and responsibilities of Green and Defendants will necessarily impact the similar interests of every other LLC member and the LLC itself. *See* Doc. 118 at 12, ¶¶ 57–60; Doc. 129 at 9–10. The question then becomes whether those not currently a party must be added. *Symes v. Harris*, 472 F.3d 754, 760 (10th Cir. 2006) (recognizing Rule 19 imposes an independent obligation to raise indispensability *sua sponte*).

Indispensability is a fact-specific inquiry. *See Rishell v. Jane Phillips Episcopal Mem. Med. Ctr.*, 94 F.3d 1407, 1411 (10th Cir. 1996). Unfortunately, the parties have not provided their analysis or insights on this issue. Intuitively, it would seem that Judge O'Hara's reasoning relative to Green's request to add the LLC as a plaintiff would naturally apply to Defendants' declaratory judgment claim. *See generally* Doc. 48. Even so, it is not clear whether such parties could be feasibly joined and, if so, how they would be aligned for purposes of diversity jurisdiction, what citizenship is attributable to each of the LLC's members, and whether this particular counterclaim requires an independent basis for jurisdiction or whether the Court may exercise jurisdiction under 28 U.S.C. § 1367 or otherwise. *Compare Pipeliners Local Union No. 798 v. Ellerd*, 503 F.2d 1193, 1198 (10th Cir. 1974) (discussing jurisdiction over compulsory counterclaims for which independent jurisdiction would not exist); *with Middleton v. Stephenson*, 749 F.3d 1197, 1199–1200 (10th Cir. 2014) (discussing complete diversity requirement in counterclaims against original plaintiff and third parties).

Other problems remain unresolved. For example, if joinder is not feasible, it is possible that the proper remedy would be to dismiss the entire action. *See* Fed. R. Civ. P. 19(b) (contemplating dismissal of "the action" if necessary parties cannot be joined). Yet there appears to be a variety of options. *See, e.g., Rural Water, Sewer & Solid Waste Mgmt. Dist. No. 1 v. City of Guthrie*, No. CIV-05-786-R, 2007 WL 9724197, at *4–7 (W.D. Okla. June 22, 2007) (dismissing all counterclaims for failure to join necessary party, while leaving intact underlying claim);

13

*Beckham Cty. Rural Water Dist. No. 3. v. City of Elk City*, No. CIV-05-1485, 2007 WL 1731438, at *6 (W.D. Okla. June 14, 2007); *cf. Mescalero Apache Tribe v. New Mexico*, 131 F.3d 1379, 1383 (10th Cir. 1997).

These uncertainties and the potential drastic results warrant considered thought and input from the parties. Therefore, the parties are ordered to show cause why Defendants' counterclaims should not be dismissed for failure to join a required party (or parties). Specifically, the parties should inform the Court of any and all persons who are necessary to the declaratory judgment counterclaim, whether the declaratory judgment counterclaim requires independent jurisdiction, and if it does, how the prospective parties would be aligned (*e.g.*, as plaintiffs or defendants), and whether they may feasibly be joined without destroying diversity jurisdiction. The parties should also address the factors in Rule 19(b), discussing whether—in the event any necessary party cannot be joined—the Court should dismiss Defendants' counterclaims. Defendants may file a brief (not to exceed 10 pages) on or before May 28, 2021, responsive to this Order. Green may file a response (not to exceed 10 pages) on or before June 7, 2021. No reply will be permitted.

**c.** Finally, Green's motion seeks to dismiss Defendants' breach of fiduciary duty counterclaim. Doc. 126 at 7–8. In particular, Defendants contend that Green (as an LLC manager and officer) owed them fiduciary duties by virtue of his role as manager and officer of the LLC. They then claim Green breached these duties by taking specifically identified, allegedly unauthorized actions and by excluding owners from access to the company. Doc. 118 at 12, ¶¶ 61–63.

Green does not contest that he owed a fiduciary duty. Instead, he relies only on alleged extraneous information to assert that he did not, as a matter of fact, commit a breach. As discussed above, *see* n. 1 *supra*, that information cannot be considered at this stage of the proceedings. As a result, Green's argument is rejected.

There is, however, another basis for dismissal in the record, which the parties have not addressed. Despite Judge Murguia's prior Order discussing derivative claims, Doc. 32 at 5–12, neither Green nor Defendants have addressed whether Defendants have standing to bring this counterclaim. Both Kansas and Oregon law describe corporate duties as running from officers and managers to the corporate entity and its stakeholders—not to other officers in their individual capacities. *See Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 146–47 (Kan. 2003);

*Emprise Bank v. Rumisek*, 215 P.3d 621, Syl. ¶¶ 12–13 (Kan. App. Ct. 2009); Or. Stat. Ann. § 63.155. Indeed, Defendants do not allege that Green had any freestanding fiduciary duty to them personally.

Thus, the parties are hereby ordered to address Defendants' standing. In particular, Defendants shall show cause why their breach of fiduciary duties claim is not derivative and why it should not be dismissed for lack of standing for the reasons set forth by Judge Murguia. Defendants may file a brief (not to exceed 10 pages) on or before May 28, 2021, responsive to this Order. Green may file a response (not to exceed 10 pages) on or before June 7, 2021. No reply will be permitted.

**B**

In addition to their counterclaims against Green, Defendants filed a motion seeking leave to file third-party claims against Green's attorney, Laner.[5] *See generally* Doc. 119-1. Green opposes that motion, arguing that leave should be denied as futile because the proposed claims against Laner fail to state a claim on which relief may be granted. Doc.

---

[5] It is an unsettled question whether leave is required when a defendant seeks to add third-party claims when filing a timely answer to an amended complaint. *Cf. United States ex rel. Precision Co.*, 31 F.3d at 1018–19 (recognizing Rule 15 governs adding new parties); *Digital Ally, Inc. v. DragonEye Tech., LLC*, No. 13-CV-2290, 2014 WL 2865592, at *3–4 (D. Kan. June 24, 2014) (noting the procedural uncertainty of permitting defendant to file an amended counterclaim). The parties' briefs seem to accept that leave is required and focus their arguments on the Rule 15 futility standard. *See, e.g.*, Doc. 119 at 1; Doc. 120 at 1. In light of that, the parties' pleadings will be evaluated to determine whether it would be futile to grant Defendants' motion for leave. *Jefferson Cty. Sch. Dist. No. R1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999); *see also Cole v. Coverstone*, No. 2:20-cv-829, 2020 WL 2571489, at *1 (S.D. Ohio May 21, 2020) (granting motion to amend and construing brief in opposition as motion to dismiss); *Owens v. BAC Home Loans Servicing, L.P.*, No. H-11-2742, 2012 WL 1494231, at *2 (S.D. Tex. Apr. 27, 2012) (same).

120. Defendants' motion for leave is denied as futile as a matter of law.[6]

**1.** In Count 1 of the proposed third-party complaint, Defendants allege a claim against Laner for fraud and/or fraud upon the court. Doc. 119-1 at 7, ¶¶ 40–44. As with the dismissed fraud claim Defendants attempted against Green, this claim relies on impermissibly generic and conclusory allegations. Part II.A.1.b., *supra*. It is neither clear which statements Defendants complain of nor what specific circumstances Defendants believe satisfy Rule 9(b)'s particularity requirement. That deficiency renders their fraud claim against Laner futile.

Moreover, Defendants do not identify any actions they took in reliance on Laner's allegedly fraudulent statements or actions. Instead, Defendants allege only that they "reasonably relied and acted upon the representations made." Doc. 119-1 at 7, ¶ 43. That will not do. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The failure to allege reliance also dooms the claim. *See Minn. Ave.*, 507 P.2d at 269 Syl. ¶ 3; *Andrews*, 283 P.2d at 654; *see also* Part II.A.1.b. *supra.*

Likewise, Defendants' fraud on the court claim fares no better. The allegations against Laner are identical to the fraud on the court allegations against Green. As explained above, these allegations are deficient. Thus, this claim is also futile.

**2.** Defendants also assert a claim for breach of fiduciary duty against Laner. Specifically, Defendants allege that "Laner owed a duty to [Defendants] to use the learning, skill and care to their benefit" and that he "breached his duty to [Defendants] by working with [Green] to exclude them from the Company." Doc. 119-1 at 7, ¶¶ 45–46. These conclusory allegations do not constitute facts showing an entitlement to relief but are instead bare recitations of the general elements that the Supreme Court has directed lower courts to ignore for purposes of

---

[6] Green also filed a motion to strike Defendants' reply in support of their motion for leave. Doc. 130. That motion is denied. *See Bunn v. Perdue*, 966 F.3d 1094, 1099 (10th Cir. 2020) (observing that "motions, briefs, and memoranda" generally "may not be attacked by a motion to strike"); *Suman v. Geneva Roth Ventures, Inc.*, No. 08-2585, 2009 WL 10707504, at *1–2 (D. Kan. Feb. 9, 2009) ("Rule 12(f) motions are a generally disfavored, drastic remedy.").

evaluating a claim's plausibility. *Iqbal*, 556 U.S. at 678–79; *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

The proposed third-party complaint fails to identify the source of Laner's supposed duty to Defendants. Perhaps Defendants intend to rely on their allegation that Laner previously performed legal work for Defendant Blake and for another corporation of Defendants. *See* Doc. 119-1 at 6, ¶ 35. But Judge Murguia previously determined Laner was never individual counsel for either Defendant, Doc. 32 at 14–16, and there are no facts to suggest that conclusion was in error or that subsequent events have changed the state of play. Whether under Kansas or Oregon law, this proposed claim is futile. *Cf. Monarch Transp., LLC v. FKMT, LLC*, 283 P.3d 249, at *8 (Kan. Ct. App. 2012) (unpub.); *Osage Capital, LLC v. Bentley Invests. Nev. III, LLC*, No. 109,786 2014 WL 902189, at *7 (Kan. Ct. App. 2014) ("[L]ike most torts, the essential elements of a breach of fiduciary duty claim are duty, breach, causation, and damages."); *Gagnes v. Lang*, 799 P.2d 670, 672 (Or. Ct. App. 1990) (affirming rejection of breach of fiduciary duty claim, because "[w]ithout some special relationship between parties, no fiduciary duty exists").

**3.** Defendants' proposed abuse of process claim against Laner mirrors the dismissed abuse of process claim against Green. For the same reasons, it too is futile. *See* Part II.A.1.c. *supra*.

**4.** Finally, as stated above, a request for punitive damages does not constitute a standalone claim for relief. *Mason*, 948 F.2d at 1554; Part II.A.1.d. *supra*. As a result, this claim is also futile.

### III

For the reasons set forth above, Plaintiff/Counterclaim Defendant's motion to dismiss, Doc. 125, is GRANTED in part and DENIED in part; Defendants' motion for leave, Doc. 119, is DENIED; Plaintiff's motion to strike, Doc. 130, is DENIED; and Defendants' are ORDERED to show cause by May 28, 2021 why Defendants' counterclaims should not be dismissed for failure to join a required party and why, barring that, Defendants' counterclaim for breach of fiduciary duties should not be dismissed for lack of standing.

It is so ordered.

Date:  May 12, 2021          s/ Toby Crouse
                             Toby Crouse
                             United States District Judge

18